UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | |
|---|---|
| BRIDGET E. LYONS, | : |
| Plaintiff, | : Case No. 3:20-cv-419 |
| v. | : Judge Thomas M. Rose |
| SECRETARY OF THE AIR FORCE, | : |
| Defendant. | : |

**ENTRY AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DOC. NO. 17)**

This case involves Plaintiff Bridget E. Lyons' ("Plaintiff") claims of discrimination and retaliation against the Secretary of the United States Air Force ("Defendant") based on Defendant's decision not to hire, or interview her, for a supervisory position with Air Force Material Command ("AFMC"). Pending before the Court is Defendant's Motion for Summary Judgment ("Motion"). (Doc. No. 17.) Defendant argues that Plaintiff cannot establish a *prima facie* case of discrimination because the person who was ultimately hired to fill the position she applied for was a member of the same protected class. (Doc. No. 17 at PageID 266-67.) Defendant further argues that Plaintiff has failed to establish a *prima facie* of retaliation because too much time elapsed between her protected activity and her application for the new position. (*Id*. at PageID 268.) Plaintiff argues that the hiring committee was aware of the prior Equal Employment Opportunity ("EEO") claims she had filed while employed with AFMC and discriminated and retaliated against her as a result. (Doc. No. 19.)

The Court **GRANTS IN PART AND DENIES IN PART** Defendant's Motion for Summary Judgment. Defendant is entitled to summary judgment on Plaintiff's discrimination

1

claim, but the case will continue on Plaintiff's retaliation claim.

I. **BACKGROUND** [1]

Plaintiff was employed as an attorney in the Legal Office ("LO") of Air Force Material Command ("AFMC") (collectively, "AFMC/LO") from October 1994 to December 2016. (Doc. No. 17-1 at PageID 273.) During this time, she filed five separate EEO claims against AFMC/LO leadership, which led to a separate civil action before this Court. (*Id.*; *Lyons v. Secretary of the Air Force*, No. 3:12-cv-142.) Those claims were ultimately settled in February 2017. (Doc. No. 15-2 at PageID 221-24.)

On September 14, 2018, AFMC/LO posted a new job opening for a Supervisory Contract Attorney. (Doc. No. 15-4 at PageID 131-36.) At the time of the posting, Plaintiff was employed by the Department of Homeland Security, United States Coast Guard, as "Chief, Acquisition and Procurement Law." (Doc. No. 15-6 at PageID 239.) Plaintiff submitted a resume, which was referred to the hiring manager for consideration. (Doc. No. 13 at PageID 118-19.) In total, thirteen applicants, including Plaintiff, were considered eligible for the position and referred for further consideration. (Doc. No. 15-5.)

Thomas Doyon ("Doyon"), the Director of AFMC/LO, appointed a hiring committee comprised of four members, whose role it was to provide a recommendation to the selecting official on the best qualified candidate to fill the position. (Doc. No. 17-1 at PageID 275; Doc. No. 14-4 at PageID 190-91.) The hiring committee was comprised of: Paul Cronin ("Cronin"), Kathryn Sowers ("Sowers"), Debra Luker ("Luker"), and Sharon Curp ("Curp"). (Doc. No. 17-1 at PageID 275.) Cronin, Luker, and Curp were all aware, to varying degrees, that Plaintiff had

---

[1] For purposes of resolving the Motion, the recitation in the "Background" section includes undisputed facts and otherwise assumes the evidence of the non-moving party as true and draws all reasonable inferences in the nonmoving party's favor, as is appropriate at this stage. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986); *Tolan v. Cotton*, 572 U.S. 650, 660, 134 S. Ct. 1861, 188 L. Ed. 2d 895 (2014).

previously filed a claim or multiple EEO claims.  (Doc. No. 18-15 at PageID 381; Doc. No. 18-13 at PageID 372; Doc. No. 18-18 at PageID 411.)

The individual members of the committee scored each applicant on their relevant contracts experience, supervisory/personnel management experience, advanced/professional education, professional military education ("PME"), and diversity of experience.  (Doc. No. 14-4 at PageID 190-91.)  In total each individual scorer could award a maximum of 100 points, with the five individuals garnering the highest total scores receiving interviews.  (*Id*.)  Plaintiff ultimately received 229 total points, which placed her sixth out of the thirteen applicants.  (Doc. No. 15-8.)  As a result, Plaintiff did not receive an interview for the position.  (Doc. No. 15-11.)  Instead, Angela Tillman ("Tillman") was interviewed for and received the position.  (Doc. No. 16-1 at PageID 284.)

Plaintiff filed her Complaint on October 9, 2020 and alleged claims of sex discrimination and retaliation under The Civil Rights Act of 1964 as amended by 42 U.S.C. § 2000e.  (Doc. No. 1.)  Defendant filed its Motion on December 9, 2021 (Doc. No. 17), and Plaintiff filed her response on December 30, 2021 (Doc. No. 19).  Defendant filed its reply on January 12, 2022.  (Doc. No. 20.)  This matter is fully briefed and ripe for review.

II.     **LEGAL STANDARDS FOR SUMMARY JUDGMENT**

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Alternatively, summary judgment is denied "[i]f there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either

party." *Hancock v. Dodson*, 958 F.2d 1367, 1374 (6th Cir. 1992) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S Ct. 2505, 91 L. Ed. 2d 202 (1986)).

The party seeking summary judgment has the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, that it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). The burden then shifts to the nonmoving party, who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250 (quoting Fed. R. Civ. P. 56(e)). In opposing summary judgment, the nonmoving party cannot rest on its pleadings or merely reassert its previous allegations. *Id*. at 248-49. It also is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). Rule 56 "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex Corp.*, 477 U.S. at 324.

A party's failure "to properly address another party's assertion of fact as required by Rule 56(c)" can result in the court "consider[ing] the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e). Additionally, "[a] district court is not ... obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). In ruling on a motion for summary judgment, it is not the judge's function to make credibility determinations, "weigh the evidence[,] and determine the truth of the matter, but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249, 255. In determining whether

a genuine issue of material fact exists, the court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in that party's favor. *Id*. at 255; *Matsushita*, 475 U.S. at 587; *Tolan v. Cotton*, 572 U.S. 650, 660, 134 S. Ct. 1861, 188 L. Ed. 2d 895 (2014). However, the "mere existence of a scintilla of evidence in support of the" nonmoving party is not sufficient to avoid summary judgment. *Anderson*, 477 U.S. at 252. "There must be evidence on which the jury could reasonably find for the plaintiff." *Id*. The inquiry, then, is "whether reasonable jurors could find by a preponderance of the evidence that the" nonmoving party is entitled to a verdict. *Id*.

### III. ANALYSIS

In the Motion, Defendant argues that Plaintiff has failed to establish a *prima facie* case of discrimination because the position was given to a member of the same protected class as Plaintiff. (Doc. No. 17 at PageID 266-67.) Additionally, Defendant argues that Plaintiff cannot establish a retaliation claim because Plaintiff cannot establish a causal nexus between her EEO complaints and the rejection of her application for the supervisory position with AFMC/LO. (*Id*. at PageID 266-67.)

#### A. Unlawful Discrimination Claim

Title VII makes it an "unlawful employment practice for an employer. . . to fail or refuse to hire. . . any individual, or otherwise to discriminate against any individual. . . because of such individual's. . . sex. . . ." 42 U.S.C. § 2000e-2(a)(1). A plaintiff may prove sex discrimination through direct or indirect evidence. *Hardy v. Eastman Chem. Co.*, 50 F. App'x 739, 742 (6th Cir. 2002). Where a plaintiff relies on circumstantial evidence of discrimination, the Court analyzes the claim using the burden shifting framework from *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-06 (1973). *Hardy*, 50 F. App'x at 741; *Johnson v. Donahoe*, 642 F. App'x 599, 608 (6th

Cir. 2016).

In the first step, the plaintiff must establish a *prima facie* case of discrimination. *Wright v. Murray Guard, Inc.*, 455 F.3d 702, 706 (6th Cir. 2006). Thus, the "plaintiff has the initial burden of demonstrating" the elements of the claim. *Corrigan v. U.S. Steel Corp.*, 478 F.3d 718, 727 (6th Cir. 2007). If the plaintiff succeeds, then for the second step "the burden of production shifts to the employer to identify a legitimate, nondiscriminatory reason for the termination." *Sullivan v. Coca-Cola Bottling Co.*, 182 F. App'x 473, 477 (6th Cir. 2006) (citing *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253, 101 S. Ct. 1089 (1981)). If the employer does so, then the third step shifts the burden back to the plaintiff to prove "the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Id.* "Throughout the analysis, 'the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" *Sullivan*, 182 F. App'x at 477 (quoting *Burdine*, 450 U.S. at 253).

### i. The *Prima Facie* Case

Plaintiff does not attempt to show age discrimination through direct evidence; therefore, the Court moves to the first step of the *McDonnell Douglas* burden shifting analysis. Plaintiff must establish a *prima facie* case of sex discrimination by showing, "(1) [s]he is a member of a protected class; (2) that [s]he applied for, and did not receive, a job; (3) that [s]he was qualified for the job; and (4) a similarly-situated person who was not in the plaintiff's protected class received the job." *Anthony v. BTR Auto. Sealing Sys.*, 339 F.3d 506, 515 (6th Cir. 2003) (citing *Thurman v. Yellow Freight Sys., Inc.*, 90 F.3d 1160, 1166 (6th Cir. 1996)); *Thompson v. City of Columbus*, No. 2:12-cv-1054, 2014 U.S. Dist. LEXIS 63119, at *15, 2014 WL 1814069 (S.D. Ohio May 7, 2014).

Both parties agree that Plaintiff is a member of a protected class, she applied for and did not receive the position, and that she was qualified for the position. (Doc. No. 17 at PageID 266; Doc. No. 19 at PageID 435.) Defendant argues, however, that Plaintiff's case fails on the final prong because the person hired for the position was qualified and a member of the same protected class as Plaintiff. (Doc. No. 17 at PageID 266-67.)

Tillman, a female, is a member of the same protected class as Plaintiff. Moreover, Tillman's resume is fairly similar to Plaintiff's. Tillman worked for the Air Force in various capacities for ten years prior to applying for the position and, she worked for Joint Strategic command for two years prior to her Air Force positions. (Doc. No. 15-7 at 247-49.) Tillman also served on active duty in the Air Force for approximately seven years and had been a member of the reserves for ten years prior to applying for the position. (*Id*. at PageID 247, 249-51.) Tillman also possesses an L.L.M. in military law with a minor in contracts and attended the Air War College. (*Id*. at PageID 251.) These qualifications are largely similar to those listed on Plaintiff's resume. (*See* Doc. No. 15-6.)

Moreover, Plaintiff does not argue in her Motion that Tillman was not a member of the same protected class or that she was not qualified for the position. Instead, Plaintiff's Complaint refers to Tillman as a "token female" hire. (Doc. No. 1 at PageID 9.) Plaintiff fails to provide any evidence that Tillman was not a member of the same protected class as Plaintiff or that she was not qualified for the supervisor position. For these reasons, the Court finds that no genuine issue of material fact exists and Plaintiff has failed satisfy the fourth prong of her *prima facie* case of discrimination.

Therefore, Defendant is entitled to summary judgment on Plaintiff's discrimination claim.

### B. Retaliation Claim

Title VII further prohibits discrimination against a job applicant "because [s]he has opposed any practice made an unlawful employment practice. . . or because [s]he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing." 42 U.S.C. § 2000e-3(a). A plaintiff alleging a claim of retaliation, as with a discrimination claim, may establish such a claim through direct or circumstantial evidence. *Yazdian v. ConMed Endoscopic Techs., Inc.*, 793 F.3d 634, 644 (6th Cir. 2015) (citing *Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 543 (6th Cir. 2008)).

Where, as here, a plaintiff does not rely on direct evidence, a *prima facie* case of retaliation must be established as part of the burden-shifting framework of *McDonnell Douglas*. *Yazdian*, 793 F.3d at 649. To establish a *prima facie* case of retaliation, a plaintiff must show, "'1) [s]he . . . engaged in protected activity, (2) the employer knew of the exercise of the protected right, (3) an adverse employment action was subsequently taken against the employee, and (4) there was a causal connection between the protected activity and the adverse employment action.'" *Hamilton v. GE*, 556 F.3d 428, 435 (6th Cir. 2009) (quoting *Niswander v. Cincinnati Ins. Co.*, 529 F.3d 714, 720 (6th Cir. 2008)). The burden on the Plaintiff at the *prima facie* stage is minimal and "easily met." *E.E.O.C. v. Avery Dennison Corp.*, 104 F.3d 858, 861 (6th Cir. 1997) (citing *Wrenn v. Gould*, 808 F.2d 493, 500 (6th Cir. 1987)).

In this case, Defendant does not dispute that Plaintiff engaged in protected activity and that her non-selection was an adverse employment decision. (Doc. No. 17 at PageID 268.) Defendant argues that the members of the committee were not aware of the specifics of Plaintiff's EEO claims. (*Id.*) Defendant further disputes that there is a causal connection between the protected activity and the adverse employment decision. (*Id.*) Plaintiff makes a wide array of arguments in

8

opposition, but in short she argues that the committee selected to evaluate the candidates contained members who were aware of her EEO claims and used a tailored criteria to prevent her from being interviewed. (Doc. No. 19 at PageID 435-36.) Therefore, the Court will turn its attention to the second and fourth prongs of the *prima facie* case.

### I. Knowledge of EEO Claim

The second prong of the *prima facie* case requires the plaintiff to show that "the employer knew of the exercise of the protected right." *Hamilton*, 556 F.3d at 435. Direct evidence of such knowledge is not required, and a plaintiff may produce circumstantial evidence of knowledge to establish their claim. *Proffitt v. Metro. Gov't of Nashville & Davidson Cty.*, 150 F. App'x 439, 442-43 (6th Cir. 2005) (citing *Mulhall v. Ashcroft*, 287 F.3d 543, 551 (6th Cir. 2002)). Where the decisionmaker[2] denies having knowledge of the alleged protected activity, the plaintiff must do more than "offer[] only conspiratorial theories . . . or 'flights of fancy, speculations, hunches, intuitions, or rumors.'" *Mulhall*, 287 F.3d at 552 (quoting *Visser v. Packer Eng'g Assocs., Inc.*, 924 F.2d 655, 659 (7th Cir. 1991) (en banc)).

Defendant argues that the hiring committee members either did not know that Plaintiff previously filed EEO claims or that they did not have any knowledge as to the details of the claims. (Doc. No. 17 at PageID 268.) Plaintiff counters that three members of the hiring committee knew of the EEO claims and Defendant's "specific knowledge" argument would create a new standard. (Doc. No. 19 at PageID 436.)

In this case, three of the four committee members admitted that they were aware Plaintiff

---

[2] While Defendant does not raise this issue, it is worth noting that the members of the hiring committee were the relevant decisionmakers in this instance. The members of the hiring committee were responsible for evaluating the candidates and selecting the five highest scoring applicants for interviews. Ultimately, it was the hiring committee's decision not to give Plaintiff an interview. *E.E.O.C. v. Ralph Jones Sheet Metal, Inc.*, 777 F. Supp. 2d 1119, 1124 (W.D. Tenn. 2011) (a decisionmaker is one who "exercised supervisory authority, imposed discipline, and influenced hiring and firing at the company . . . The management determination is not confined to labels but rather must be assessed in light of functions").

9

had filed EEO claims. Cronin had been Plaintiff's second level supervisor during her time with AFMC/LO and was made aware of her prior EEO claims. (Doc. No. 18-15 at PageID 381.) Luker was also aware of the EEO claims because the case had been "mentioned to her" when she was assigned to her position. (Doc. No. 18-13 at PageID 372.) Additionally, Curp was aware of the EEO settlement due to a billboard that referenced the case previously before this Court outside of one of the gates at Wright-Patterson Air Force Base. (Doc. No. 18-18 at PageID 411.)

The purpose of an EEO complaint is to report "discrimination because of your race, color, religion, sex (including gender identity, sexual orientation, and pregnancy), national origin, age (40 or older), disability or genetic information." (*See* U.S. Equal Employment Opportunity Commission: Filing a Complaint, https://www.eeoc.gov/federal-sector/overview-federal-sector-eeo-complaint-process (last visited March 31, 2022).) Therefore, the very fact that a claim was filed notifies a person that another individual was objecting to some allegedly unlawful employment practice.

Defendant does not cite any caselaw supporting a "specific knowledge" standard. Indeed, to adopt Defendant's "specific knowledge" standard would allow an employer to inform a hiring committee, either directly or covertly, that a prospective applicant had filed an EEO claim, have the hiring committee draw a negative inference from the filing of that EEO claim, and deny an applicant a position based on that EEO claim, but none the less avoid liability because they did not know the specific details of the claim. Such a strict standard would heighten the burden unnecessarily on plaintiffs at the *prima facie* stage, where the burden is relatively low. *Robinson v. City of Middletown*, No. 1:09-cv-005, 2010 U.S. Dist. LEXIS 99781, at \*21, 2010 WL 3780985 (S.D. Ohio Sept. 23, 2010) (quoting *Gribcheck v. Runyon*, 245 F.3d 547, 551 (6th Cir. 2001) ("the burden of proof for retaliation presents a 'low hurdle' to [p]laintiff")). The Court declines to do

10

so and finds that Plaintiff has satisfied the second prong of her *prima facie* case of retaliation.

## II. Causal Connection

The fourth prong requires the plaintiff to show that "there was a causal connection between the protected activity and the adverse employment action." *Hamilton*, 556 F.3d at 435. "[T]he fourth part of the test 'requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer.'" *Yazdian*, 793 F.3d at 649 (quoting *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2533, 186 L. Ed. 2d 503 (2013)); *E.E.O.C. v. Ford Motor Co.*, 782 F.3d 753, 767 (6th Cir. 2015) (en banc).

Defendant argues that Plaintiff cannot succeed on this prong because her EEO claim and the decision not to hire her took place several years apart. (Doc. No. 17 at PageID 270.) Specifically, Defendant points to the filing of Plaintiff's claims in 2011 and 2013 and argues that 2018 is too long a time to demonstrate temporal proximity and, therefore, causation. (*Id*. at PageID 271.) Plaintiff makes a litany of arguments in opposition. First, Plaintiff argues that Doyon improperly influenced and controlled the panel. (Doc. No. 19 at PageID 424.) Next, she argues that members of the panel were inconsistent in their understanding of the criteria for the position and who developed the criteria in the first place. (*Id*. at PageID 425-26.) Finally, Plaintiff argues that members were inconsistent in their application of the criteria. (*Id*. at 426-27.)

The Court must first address Defendant's temporal proximity argument. "One way by which a plaintiff can demonstrate a causal connection is to show close temporal proximity between the adverse employment actions and the protected activity." *Taylor v. Geithner*, 703 F.3d 328, 339 (6th Cir. 2013) (citing *Upshaw v. Ford Motor Co.*, 576 F.3d 576, 588 (6th Cir. 2009)). The Sixth Circuit has held that a period as short as four months is insufficient to demonstrate temporal proximity. *Cooper v. City of N. Olmstead*, 795 F.2d 1265, 1272 (6th Cir. 1986); *Allen v. Ohio*

*Dep't of Job & Family Servs.*, 697 F. Supp. 2d 854, 897 (S.D. Ohio 2010); *Covert v. Monroe Cnty. Dep't of Job & Family Servs.*, No. 2:08-cv-744, 2010 U.S. Dist. LEXIS 55882, at *36, 2010 WL 2346550 (S.D. Ohio June 8, 2010). The Court agrees that temporal proximity, alone, is insufficient in this case. The hiring committee members who were aware of the EEO claims all stated that they learned of the claims while they were ongoing or near in time to the settlement of the claims. Therefore, the latest any of the members of the hiring committee would have learned of the claims would have been approximately one year before the position in question was posted.

However, this is not where the inquiry ends. "[W]here some time elapses between when the employer learns of a protected activity and the subsequent adverse employment action, the employee must couple temporal proximity with other evidence of retaliatory conduct to establish causality." *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008). Moreover, as the *Taylor* court indicates, temporal proximity is only "[o]ne way by which a plaintiff can demonstrate a causal connection." 703 F.3d at 339.

While the Court rejects Plaintiff's contention that Doyon controlled the hiring committee because he referred to them as "*my* acquisition law chief" or "*my* procurement law fraud division chief" (Doc. No. 19 at PageID 424) (emphasis in original), there are inconsistencies in the way some committee members applied the criteria.

For instance, Cronin, who was aware of the prior EEO claims, stated in the EEO investigation that he awarded Plaintiff points for leadership because he inferred that she had supervisory experience from elements of her resume. (Doc. No. 18-15 at PageID 378-79.) This included giving her credit for "time back in the early 1990s where she led parts of the Wing legal office, even though she may or may not have been the supervisor." (*Id*. at PageID 379.) However, Cronin did not award Plaintiff any points for PME because it did not appear on her resume. (*Id*.)

...

Plaintiff spent nearly five years on active duty in the United States Air Force and spent an additional sixteen years in the reserves where she attained the rank of lieutenant colonel. (Doc. No. 15-6 at PageID 242-44.) It is difficult to imagine an officer spending twenty-one years in the Air Force and reaching the rank of lieutenant colonel without attending any educational courses.[3] It further raises the question of why an individual, such as Cronin, who works closely with Air Force personnel could not infer that Plaintiff likely had some PME.

Indeed, it is odd that Cronin needed to "infer" Plaintiff's supervisory experience in the first place. Plaintiff's resume specifically states her position at the Department of Homeland Security as "Chief, Acquisition and Procurement Law." (Doc. No. 15-6 at PageID 239.) Indeed, the first line of this job description is "[l]ed legal team." (*Id.*) It is unclear why any inference of supervisory experience was necessary here.

Similarly, Curp, who was also aware of the prior EEO claims, did not award any points for PME or supervisory experience. (Doc. No. 15-9 at PageID 254.) Indeed, Curp stated in the EEO investigation that she attended the Air War College at the same time as both Tillman and Plaintiff. (Doc. No. 18-18 at PageID 410.) Yet Curp did not award Plaintiff any points for PME, simply stating "none listed." (Doc. No. 15-9 at PageID 254.) Nor did Curp award Plaintiff any points for supervisory experience even though, as noted above, the description on Plaintiff's resume lists supervisory responsibilities. (Doc. No. 15-9 at PageID 254; Doc. No. 15-6 at PageID 239.) Again, it appears inconsistent that a committee member, who was aware of the EEO claims, would simply ignore the fact that she attended an advanced military school with the Plaintiff and ignore a

---

[3] It also appears that a certain level of PME is required to be promoted to Lieutenant Colonel in the first place. (*See* USAF Officer: Air Force Officer Rank Structure – Promotion Requirements & Timeline, https://usafofficer.com/air-force-officer-rank-structure/#:~:text=Approximately%2070%25%20of%20Majors%20will,eligible%20for%20promotion%20to%20Colonel. (last visited April 5, 2022).)

13

supervisory position listed on Plaintiff's resume.

Ultimately, Plaintiff missed out on the fifth interview spot by seventeen points. (Doc. No. 15-8.) Based on the scoring inconsistencies of at least two committee members who were aware of Plaintiff's EEO claims, the Court finds that Plaintiff has satisfied the fourth prong and established a *prima facie* case of retaliation.

### C. Burden Shifting

When a plaintiff has established a *prima facie* case of retaliation, the burden shifts back to the defendant "to produce a legitimate, non-discriminatory reason for the adverse employment action." *Sullivan*, 182 F. App'x at 477 (citing *Burdine*, 450 U.S. at 252-53). An employer will satisfy its burden if it articulates a valid rationale for its decision. *Sullivan*, 182 F. App'x at 477 (citing *Hartsel v. Keys*, 87 F.3d 795, 800 (6th Cir. 1996)). "If the employer presents a legitimate, non-discriminatory reason for the adverse action, a plaintiff will survive summary judgment only by raising a genuine issue of material fact as to whether 'the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.'" *Sullivan*, 182 F. App'x at 477 (quoting *Burdine*, 450 U.S. at 253). In order to establish pretext, the plaintiff must show "by a preponderance of the evidence either (1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate [the adverse action], or (3) that they were *insufficient* to motivate [the adverse action]." *Manzer v. Diamond Shamrock Chemicals Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994) (emphasis in original) (citation omitted). Throughout the analysis, "the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Burdine*, 450 U.S. at 253.

In this case, Defendant has not clearly identified a non-discriminatory reason, electing instead to hang their defense on the lack of temporal proximity at the *prima facie* stage.

14

Presumably, Defendant believes the scorecard is the non-discriminatory reason for the adverse action. This scorecard raises a genuine issue of material fact as to whether the scoring of some committee members was pretext for discrimination, however. *Sullivan*, 182 F. App'x at 477 (quoting *Burdine*, 450 U.S. at 253). The inconsistency in the scoring, by two individuals who were aware of Plaintiff's EEO claims, raises questions of credibility as to whether Cronin and Curp legitimately decided not to award points for PME and supervisory experience or whether those decisions were retaliation for Plaintiff's EEO claims against AFMC/LO. Indeed, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Reeves v. Sanderson Plumbings Prods.*, 503 U.S. 133, 150, 120 S. Ct. 2097 (2000) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505 (1986)); *Montell v. Diversified Clinical Servs.*, 757 F.3d 497, 503 (6th Cir. 2014). Since determining whether the irregularities in scoring would require credibility determinations and the drawing of inferences from the facts presented, the Court finds that a genuine issue of material fact exists as to whether Defendant's scoring of Plaintiff's application was a pretext for the decision not to hire or interview her in retaliation for filing EEO claims.

Therefore, the Court denies Defendant's Motion as to Plaintiff's retaliation claim.

## IV.  CONCLUSION

For the reasons stated above, the Court **GRANTS IN PART AND DENIES IN PART** Defendant's Motion for Summary Judgment (Doc. No. 17). Defendant is entitled to summary judgment on Plaintiff's discrimination claim, but the case will continue on Plaintiff's retaliation claim.

**DONE** and **ORDERED** in Dayton, Ohio, this Thursday, April 7, 2022.

                  s/Thomas M. Rose

                  _____

                  THOMAS M. ROSE
                  UNITED STATES DISTRICT JUDGE